FILED
COURT OF APPEALS
DIVISION II

2014 SEP -3 AM 3: 21

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44259-1-II |
| Respondent, | |
| v. | |
| JARED ALLAN PINSON, | PUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Jared Allan Pinson appeals his second degree assault conviction (domestic violence), claiming that prosecutorial misconduct deprived him of a fair trial. We hold that (1) the prosecutor engaged in misconduct by arguing in closing that Pinson's failure to respond to police questioning was evidence of his guilt, in violation of the constitutional right against self-incrimination; (2) although Pinson did not object to the prosecutor's argument, he did not waive his prosecutorial misconduct claim because an instruction would not have cured the prejudice; and (3) the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. Accordingly, we reverse and remand for a new trial.

## FACTS

On July 29, 2012, Mason County Sheriff's Deputy Joel Nault responded to a reported domestic violence incident in Shelton. He contacted Stacey Campbell, who was in a parking lot across the street from her residence. She told Deputy Nault that Pinson had awakened her, thrown her off the couch where she was sleeping, and pulled her to the floor by her neck. She

said she feared for her life, could not breathe, escaped and ran out the door, and called 911. Deputy Nault described Campbell as hysterical, sobbing, and holding her neck, where he noticed red markings.

Deputy Nault and another officer went to Pinson's house. When Pinson appeared, they put him in handcuffs and took him to the front porch. Pinson was cooperative and allowed the officers to talk with him. Pinson explained that he and Campbell had been drinking with friends and got into a fight. When Deputy Nault asked if the fight was verbal or physical, Pinson did not respond. The State charged Pinson with second degree assault (domestic violence).

The trial court ruled in limine that the State could not ask Deputy Nault about Pinson not answering the question of whether the fight was physical. However, *defense counsel* asked Deputy Nault that question during cross-examination. The trial court ruled that this inquiry opened the door for the State to ask about Pinson's response to Deputy Nault. The prosecutor subsequently elicited testimony from Deputy Nault that when he asked Pinson if the fight got physical, Pinson became quiet. Defense counsel then had Deputy Nault confirm that Pinson had no obligation to talk with him.

Campbell testified that she and Pinson were in the seventh year of their relationship and that she continued to love him. She testified that they had friends over for dinner that July night and had been drinking, but she did not remember calling 911 or talking with the police. She explained that the redness on her neck and chest depicted in police photographs was from her drinking and crying, not from a physical assault.

2

Pinson testified that he and Campbell had an argument that evening, but he did not want to deal with it and went to bed instead. The next thing he recalled was the deputies yelling his name and telling him to come down the stairs. Pinson stated that he did not answer Deputy Nault's question about whether the fight was physical because "it wasn't going to help my situation any. They're not going to believe me anyways, so I just didn't say anything." Report of Proceedings (RP) at 68.

During closing argument, the State argued that Pinson's silence when Deputy Nault asked if the fight was physical was evidence of his guilt. Pinson did not object to this argument. Defense counsel explained in closing argument that Pinson simply did not want to answer any more questions, which was his right.

The jury found that Pinson committed second degree assault and by special verdict that it involved domestic violence. Pinson appeals.

## ANALYSIS

### A.     PROSECUTORIAL MISCONDUCT

Pinson claims that the prosecutor committed misconduct when he urged the jury to treat Pinson's silence as substantive evidence of guilt. The prosecutor stated:

> The next question Deputy Nault asked [Pinson] is did the fight get physical. And his answer to that is not to respond to it, *which is evidence of his guilt*, that he has something to hide, because as I think you all know from your common experience, if you were confronted late at night, woken up by two police officers who want to take you to jail and they confront you with that type of question, if you're innocent, you're going to have a wholly different response.

RP at 94 (emphasis added). We hold that this statement was improper because it violated Pinson's constitutional right against self-incrimination. We further hold that Pinson's failure to

3

object at trial did not waive his prosecutorial misconduct claim because the misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice, and that the misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).

    1.   Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must show that "in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). We review the prosecutor's conduct and whether prejudice resulted therefrom "by examining that conduct in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.' " *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotation marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

When the defendant fails to object to the challenged portions of the prosecutor's argument, he is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *Emery*, 174 Wn.2d at 760-61. In making this determination, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Emery*, 174 Wn.2d at 762. The defendant must show that (1) no curative instruction would have eliminated the prejudicial effect, and (2) the misconduct

resulted in prejudice that had a substantial likelihood of affecting the verdict. *Emery*, 174 Wn.2d at 760-61.

2. Improper Argument

The Fifth Amendment to the United States Constitution states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." Article I, section 9 of the Washington State Constitution states that "[n]o person shall be compelled in any criminal case to give evidence against himself." Both provisions guarantee a defendant the right to be free from self-incrimination, including the right to silence. *State v. Knapp*, 148 Wn. App. 414, 420, 199 P.3d 505 (2009). A defendant has the right to remain silent both prearrest and postarrest; i.e., both before and after a defendant is given *Miranda*[1] warnings. *State v. Burke*, 163 Wn.2d 204, 217, 181 P.3d 1 (2008).

When (as here) the defendant testifies at trial, the State under certain circumstances can use the defendant's prearrest silence for impeachment.[2] *Burke*, 163 Wn.2d at 217. However, our Supreme Court has held that the State cannot use the defendant's silence as substantive evidence of guilt. *Burke*, 163 Wn.2d at 217. More specifically, it is improper for the State to make closing arguments that infer guilt from the defendant's silence. *State v. Easter*, 130 Wn.2d 228, 236, 922 P.2d 1285 (1996). "[W]hen the State invites the jury to infer guilt from the invocation of the right of silence, the Fifth Amendment and article I, section 9 of the Washington Constitution are violated." *Burke*, 163 Wn.2d at 217. As a result, the prosecutor's argument that

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] The State cannot use a defendant's silence after *Miranda* warnings have been given even for impeachment. *Burke*, 163 Wn.2d at 217.

Pinson's silence could be used as substantive evidence of his guilt clearly was improper under Washington law.

However, the State argues that the prosecutor's argument was justified under *Salinas v. Texas*, ___U.S.___, 133 S. Ct. 2174, 186 L. Ed. 2d 376 (2013), where the United States Supreme Court identified an exception to the common law rule that a defendant's silence cannot be used as substantive evidence of guilt. In *Salinas*, the defendant voluntarily agreed to answer a police officer's questions without being placed in custody or receiving *Miranda* warnings. 133 S. Ct. at 2178. But he declined to answer one question by looking down at the floor and remaining silent. *Salinas*, 133 S. Ct. at 2178. The State used the defendant's reaction to the officer's question as evidence of his guilt. *Salinas*, 133 S. Ct. at 2178.

The Court held that before a defendant can rely on the privilege against self-incrimination he or she must invoke it. *Salinas*, 133 S. Ct. at 2179, 2184. The only exceptions to the invocation requirement are that (1) a defendant need not take the witness stand to invoke the privilege at trial, and (2) a defendant subject to a custodial interrogation or other governmental coercion need not invoke the privilege. *Salinas*, 133 S. Ct. at 2179-80. The Court refused to create a third exception for when the defendant remains silent and declines to answer a question. *Salinas*, 133 S. Ct. at 2181. "A suspect who stands mute has not done enough to put police on notice that he is relying on his Fifth Amendment privilege." 133 S. Ct. at 2182.

The defendant in *Salinas* did not affirmatively invoke his right to remain silent. *Salinas*, 133 S. Ct. at 2180. And he could not rely on the second exception to the general rule requiring invocation of the privilege because it was undisputed that the police interview was voluntary and that he was free to leave at any time. *Salinas*, 133 S. Ct. at 2180. Accordingly, the Court held

that the State's use of the defendant's noncustodial silence as substantive evidence of guilt did not violate the Fifth Amendment. *Salinas*, 133 S. Ct. at 2180.

But *Salinas* does not apply here. Although Deputy Nault testified that Pinson allowed the officers to talk with him, Pinson testified that at the time of the interview he had been handcuffed and taken to the front porch. As a result, Pinson's interrogation was custodial rather than voluntary. *See State v. Heritage*, 152 Wn.2d 210, 218, 95 P.3d 345 (2004) (a suspect is in custody when a reasonable person in the suspect's position would feel his freedom was curtailed to the degree associated with a formal arrest). The Court stated in *Salinas* that "a suspect who is subjected to the 'inherently compelling pressures' of an unwarned custodial interrogation need not invoke the privilege." *Salinas*, 133 S. Ct. at 2180 (quoting *Miranda*, 384 U.S. at 467). Accordingly, *Burke* applies, and it was improper for the State to use Pinson's silence as evidence of his guilt.

3. Waiver of Claim

Because Pinson did not object to the prosecutor's improper argument, he waived any error unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured any resulting prejudice. *Emery*, 174 Wn.2d at 760-61. A suitable curative instruction may be able to alleviate any prejudice from a brief reference to a defendant's silence. *Emery*, 174 Wn.2d at 761. But here the prosecutor went beyond a mere reference to Pinson's silence. He deliberately and expressly told the jury that Pinson's silence was evidence of his guilt. Further, the prosecutor explained why refusing to answer the question showed that Pinson was guilty – because an innocent person would have responded differently.

We hold that a curative instruction would not have been effective in the face of this direct and specific argument. Even if the trial court had instructed the jury that Pinson's silence could not be used as evidence of his guilt, the prosecutor's argument was so prejudicial that such an instruction would not have eliminated the prejudice. Therefore, Pinson did not waive his prosecutorial misconduct argument.

4.    Prejudice

To prevail on his prosecutorial misconduct claim, Pinson must also show that the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. *Emery*, 174 Wn.2d at 761, 764 n.14. " 'The criterion always is, has such a feeling of prejudice been engendered or located in the minds of the jury as to prevent a [defendant] from having a fair trial?' " *Emery*, 174 Wn.2d at 762 (quoting *Slattery v. City of Seattle*, 169 Wash. 144, 148, 13 P.2d 464 (1932) (alteration in original)).

Here, the State had only indirect evidence that Pinson assaulted Campbell. Pinson denied assaulting Campbell, and Campbell did not recall what happened that evening. The investigating officers did not witness any assault. Instead, the State relied on statements Campbell made in her 911 call[3] and to police at the scene that Pinson had assaulted her. But there was evidence that Campbell was intoxicated when she made those statements. The State presented evidence that Campbell's neck and chest were red, but she testified that this redness did not come from an assault but rather from her intoxication. As a result, the State's case was not particularly strong.

---

[3] The 911 call was played to the jury, but neither party included it in the appellate record. As a result, we do not speculate whether the content of the 911 call would be sufficient to overcome any prejudice resulting from the improper argument.

44259-1-II

In addition, an instructional error exacerbated the prosecutor's improper comment. The reasonable doubt instruction inadvertently omitted the sentence from WPIC 4.01 that stated, "The defendant has no burden of proving that a reasonable doubt exists." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at 85 (3d ed. 2008) (WPIC). This instruction violated our Supreme Court's directive that the trial courts use only WPIC 4.01 to instruct the jury on reasonable doubt. *State v. Bennett*, 161 Wn.2d 303, 318, 165 P.3d 1241 (2007). Because the jury was not informed that Pinson had no burden of proof, there was a greater risk that prosecutorial misconduct would affect the verdict.

In this context, the State's argument that Pinson's silence when asked if the fight turned physical was evidence of his guilt was significant. The State essentially asked the jury to find that Pinson's silence was an admission of guilt, and argued that such an admission was sufficient to convict him. We hold under the circumstances that this argument had a substantial likelihood of affecting the jury's verdict. As a result, we hold that Pinson sustained his burden of establishing prosecutorial misconduct and that his conviction must be reversed.

B. ADDITIONAL ARGUMENTS

Pinson also argues that (1) the prosecutor engaged in misconduct by making statements that the evidence did not support, (2) his attorney provided ineffective representation, (3) the trial court's reasonable doubt instruction omitted the required statement that Pinson had no burden of proving that a reasonable doubt exists, and (4) the sentencing court erred in imposing fees for his court appointed attorney. Because we reverse based on prosecutorial misconduct, we need not address these issues.

9

We reverse and remand for a new trial.

_____
MAXA, J.

We concur:

_____
HUNT, P.J.

_____
LEE, J.