FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 JUL -9 AM 8: 39

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75845-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| CHRISTOPHER GARCIA GONZALEZ, | ) | |
| | ) | FILED: July 9, 2018 |
| Appellant. | ) | |

VERELLEN, J. — Christopher Garcia Gonzalez appeals his conviction for second degree murder and theft of a motor vehicle. Gonzalez assigns error to the trial court's denial of his request to instruct the jury on the lesser included offense of second degree manslaughter. Because the evidence does not support an inference that Gonzalez committed second degree manslaughter rather than second degree murder, the trial court did not abuse its discretion when it denied Gonzalez's request.

Gonzalez also claims the prosecutor committed misconduct during closing argument. Given the prosecutor's entire argument, the evidence, and the jury instructions, we conclude it is unlikely the prosecutor's challenged remarks affected the jury's verdict.

Therefore, we affirm.

## FACTS

On September 20, 2015, Lynnwood police officers found the body of Christopher Davis. A belt was found wrapped three times around Davis's neck and cinched tight so it would not come loose. Davis's blood was also found on the floor, walls, and on two dumbbells found near him. The medical examiner concluded that Davis had been struck in the head before the belt was wrapped around his neck. The medical examiner determined the cause of death was ligature strangulation and the manner of death was homicide.

On October 15, 2015, police found Gonzalez in California driving Davis's car. The police also connected Gonzalez to the crime through e-mails, text messages, and cell phone location records. The State charged Gonzalez with second degree murder and theft of a motor vehicle.

When considering the parties' proposed instructions, the trial court denied Gonzalez's request to instruct the jury on the lesser included offense of second degree manslaughter.

During trial, the State introduced a jail phone call from Gonzalez to his girlfriend. During closing argument, the State replayed the call. The prosecutor emphasized Gonzalez's pattern of deception and his repeated statements during the phone call that he only "allegedly" committed the murder. The prosecutor then stated, "[O]n that jail call, during that conversation, you never heard him say anything about being innocent. Challenge met. Find him guilty."[1]

---

[1] Report of Proceedings (RP) (Sept. 15, 2016) at 1090.

2

The jury found Gonzalez guilty on both counts.

Gonzalez appeals.

ANALYSIS

I.  Lesser Included

Gonzalez contends the trial court abused its discretion when it refused to instruct the jury on the lesser included offense of second degree manslaughter.

"A defendant is entitled to an instruction on a lesser included offense when (1) each of the elements of the lesser included offense is a necessary element of the charged offense and (2) the evidence in the case supports an inference that the lesser crime was committed."[2] Courts refer to the first part of the test as the "legal prong" and the second part as the "factual prong."[3] The parties agree the legal prong is satisfied.[4]

We review a trial court's decision under the factual prong for abuse of discretion.[5] In determining the factual prong, the panel reviews "the evidence in the light most favorable to the party requesting the instruction."[6] The evidence must raise an inference that only the lesser included offense was committed instead of the charged offense.[7]

_____

[2] State v. Henderson, 182 Wn.2d 734, 742, 344 P.3d 1207 (2015).

[3] State v. Berlin, 133 Wn.2d 541, 546, 947 P.2d 700 (1997).

[4] See id. at 551 ("We hold first and second degree manslaughter are lesser included offenses of second degree intentional murder.").

[5] Henderson, 182 Wn.2d at 743.

[6] State v. Wade, 186 Wn. App. 749, 772, 346 P.3d 838 (2015).

[7] State v. Fernandez-Medina, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000).

To determine whether the evidence supports an inference that Gonzalez committed second degree manslaughter rather than second degree murder, we must compare the definitions of the two crimes.[8] A person is guilty of second degree murder when "[w]ith *intent* to cause the death of another person but without premeditation, he or she causes the death of such person."[9] "A person acts with intent or intentionally when he or she acts with the objective or purpose to accomplish a result which constitutes a crime."[10] A person is guilty of second degree manslaughter when "with *criminal negligence*, he or she causes the death of another person."[11]

> A person is criminally negligent or acts with criminal negligence when he or she fails to be aware of a substantial risk that a wrongful act may occur and his or her failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the same situation.[12]

Here, the trial court refused to instruct the jury on second degree manslaughter because the evidence did not establish that Gonzalez acted with criminal negligence:

> I don't think the evidence supports a criminal negligence argument in putting the belt around the neck to begin with and constricting it in such a way as to render someone unconscious. A person should

---

[8] See Henderson, 182 Wn.2d at 743 ("To determine whether the evidence supports an inference that Henderson committed first degree manslaughter rather than first degree murder by extreme indifference, we must carefully compare the definitions of the two crimes.").

[9] RCW 9A.32.050(1)(a) (emphasis added).

[10] RCW 9A.08.010(1)(a).

[11] RCW 9A.32.070(1) (emphasis added).

[12] RCW 9A.08.010(1)(a).

know that there's a substantial risk of death in that action by itself. That, coupled with the previous activity that must have taken place in terms of the lacerations on the head, which were caused possibly by the barbells that were there, and the blood distribution around the room indicates there was a substantial struggle that took place prior to that. All of that evidence, taken together, would only support a jury finding of either intentional murder or reckless conduct and not negligent conduct.[13]

In State v. Wade, this court considered whether Wade was entitled to a jury instruction on the lesser included offenses of first degree and second degree manslaughter after a jury convicted him of second degree murder.[14] There, the victim died of asphyxia from strangulation. This court concluded, "There was no evidence that the strangulation was either reckless or the result of criminal negligence" because "[t]he undisputed testimony established that whether [the victim] was intentionally strangled manually or with a ligature, Wade had to continue to apply pressure, even after she lost consciousness, for one to two minutes."[15] We held the court did not err in denying the request to instruct the jury on first degree and second degree manslaughter.[16]

Similarly, even viewed in the light most favorable to Gonzalez, there is no evidence in this case that the strangulation was the result of criminal negligence rather than intent. The police found Davis with a belt wrapped around his neck three times. The belt was "drawn tight at the back of the neck by passing the free

---

[13] RP (Sept. 14, 2016) at 1028.

[14] 186 Wn. App. 749, 346 P.3d 838 (2015).

[15] Id. at 772.

[16] Id. at 773.

end under one of the loops and pulling it tight."[17] And the belt was cinched in such a way to prevent it from coming loose or unraveling. The medical examiner determined Davis died from ligature strangulation.

The police also found blood on the floors and walls around Davis's body. Two dumbbells were found near Davis's body and DNA from blood on the dumbbells matched Davis. The medical examiner determined that Davis was struck in the head before the belt was wrapped around his neck.

Gonzalez argues the court should not have considered the evidence of a struggle prior to Davis's death. But the trial court is not required to take a limited view of the evidence. The court "must consider all of the evidence that is presented at trial when it is deciding whether or not an instruction should be given."[18]

Gonzalez also argues "[i]t was the constriction caused by the belt that allowed for strangulation to take place, and not constant pressure by the perpetrator."[19] The medical examiner testified that loss of consciousness occurs within 10 to 15 seconds after blood flow is blocked and that death occurs within minutes if the pressure is not released. The medical examiner determined that Davis "los[t] consciousness and proceeded to die over a period of subsequent minutes" from the "belt around his neck."[20] Although it does not appear that

---

[17] RP (Sept. 14, 2016) at 980.

[18] Fernandez-Medina, 141 Wn.2d at 456.

[19] Appellant's Br. at 12.

[20] RP (Sept. 14, 2016) at 994-95.

6

Gonzalez manually applied pressure to Davis's neck in the time between unconsciousness and death, the evidence supports an inference that, following a struggle, Gonzalez wrapped the belt around Davis's neck and cinched it in such a way to ensure constant pressure, even after Davis lost consciousness. The evidence does not support a reasonable inference that Gonzalez negligently forgot to loosen the belt after Davis was rendered unconscious.

Because the evidence does not support an inference that Gonzalez committed second degree manslaughter rather than second degree murder, we conclude the court did not abuse its discretion when it denied Gonzalez's request to instruct the jury on the lesser included offense.

## II. Prosecutorial Misconduct

Gonzalez argues a new trial is required because the State committed prosecutorial misconduct during closing argument. Gonzalez claims the prosecutor's statements shifted the burden of proof and commented on his right to remain silent.

"Allegations of prosecutorial misconduct are reviewed under an abuse of discretion standard."[21]

To prevail on a claim of prosecutorial misconduct, the defendant bears the burden of establishing that the conduct was both improper and prejudicial.[22]

---

[21] State v. Brett, 126 Wn.2d 136, 174-75, 892 P.2d 29 (1995).

[22] State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)).

"Once a defendant establishes that a prosecutor's statements are improper, we determine whether the defendant was prejudiced under one of two standards of review."[23] If the defendant objected at trial, the defendant must show "a substantial likelihood that the misconduct affected the jury's verdict."[24] "If the defendant did not object at trial, the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice."[25]

In analyzing prejudice, we evaluate the prosecutor's challenged statements "within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions."[26] "A prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and to express such inferences to the jury."[27]

Here, during trial, the court introduced a jail phone call between Gonzalez and his girlfriend. In the call, Gonzalez initially denied he was charged with murder and then repeatedly used the word "allegedly" to discuss the murder. Prior to closing argument, the prosecutor informed the court that he intended to play the jail call during closing. The prosecutor told the court he would focus on

---

[23] State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

[24] In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 704, 286 P.3d 673 (2012).

[25] Emery, 174 Wn.2d at 760-61.

[26] State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

[27] State v. Boehning, 127 Wn. App. 511, 519, 111 P.3d 899 (2005).

Gonzalez's use of the word "allegedly" and that Gonzalez "never says he's innocent."[28] Gonzalez objected and argued that such argument flipped the burden of proof. The court overruled Gonzalez's objection.

While the objection by defense counsel focused on burden flipping, there was some discussion in the prosecutor's argument and the court's oral ruling of the right to remain silent. For purposes of this opinion, we will assume the objection preserved Gonzalez's claim of error that the prosecutor's statements improperly commented on his right to remain silent.

During closing, the State replayed the call and made the following argument:

> You heard the defendant say "allegedly." And he said it maybe two or three more times during the course of that call. It's up for you to discern what was meant by that. And what I'm about to say is not in any way—I don't want it to sound that I am in any way walking away from the very high burden that . . . I have to prove to you in this case that the defendant murdered Chris Davis and he stole his car. It's not meant by that in any way. But on that day, on that jail call, during that conversation, you never hear him say anything about being innocent. Challenge met. Find him guilty.[29]

Gonzalez claims the prosecutor improperly shifted the burden of proof. The State bears the burden of proving "beyond a reasonable doubt, every element necessary to constitute the crime with which the defendant is charged."[30]

---

[28] RP (Sept. 15, 2016) at 1044.

[29] Id. at 1089-90.

[30] Glasmann, 175 Wn.2d at 713.

Although the prosecutor has wide latitude during closing, it is improper for the prosecutor to argue or imply that the burden of proof rests with the defendant."[31]

During the call, Gonzalez's girlfriend confronted Gonzalez with the fact that the State charged him with murder. At first, Gonzalez denied any knowledge of the murder charge and claimed to be "in here for DUI."[32] Later in the call, he acknowledged the murder charge.

> Okay, okay, let me be honest with you. For whatever they have me booked on, it's not really what they—it's allegedly. You know what I'm saying? They could be saying that I did that, but yet they don't have enough evidence to prove that I did that. It's allegedly.[33]

The prosecutor never implied that Gonzalez had any duty to present evidence or to prove his innocence, rather the prosecutor was responding to Gonzalez's claim that the State could not prove that he committed the murder. The prosecutor never misstated the law and he correctly identified the burden of proof multiple times during his closing argument. In this narrow setting, the prosecutor's statements did not shift the burden of proof. We acknowledge that the statements are close to the line and, in almost any other scenario, the argument would be improper. We caution against the risk inherent in addressing a defendant's failure to profess his or her innocence. The better practice is to avoid any unintended inference.

---

[31] Thorgerson, 172 Wn.2d at 453.

[32] Ex. 175.

[33] Id.

10

Gonzalez also claims the prosecutor improperly commented on his constitutional right to remain silent and contends we should apply the constitutional harmless error standard. Before a defendant can rely on his right to remain silent, he must invoke it.[34] "The only exceptions to the invocation requirement are that (1) a defendant need not take the witness stand to invoke the privilege at trial, and (2) a defendant subject to a custodial interrogation or other governmental coercion need not invoke the privilege."[35]

Here, Gonzalez made the statements to his girlfriend and not in the context of a custodial interrogation. Additionally, Gonzalez was not silent. When his girlfriend confronted him about the murder charge, he at first denied the fact and later used the word "allegedly" to discuss the murder. Gonzalez's constitutional right to remain silent was not implicated by the admission of the phone call and the prosecutor's closing argument.

Even if Gonzalez's right to remain silent was implicated, the constitutional harmless error standard is applied only when the State "comments" on an accused's silence.[36] "Comment" means the State uses the accused's silence to suggest to the jury that the refusal to talk is an admission of guilt.[37]

---

[34] State v. Pinson, 183 Wn. App. 411, 418, 333 P.3d 528 (2014).

[35] Id.

[36] State v. Easter, 130 Wn.2d 228, 236-37, 242, 922 P.2d 1285 (1996) (The Fifth Amendment to the United States Constitution and article I, section 9 of the Washington State Constitution guarantee a criminal defendant the right to remain silent).

[37] State v. Lewis, 130 Wn.2d 700, 707, 927 P.2d 235 (1996).

11

Here, the prosecutor did not improperly comment on Gonzalez's right to remain silent because he did not suggest that any of Gonzalez's statements during the call constituted an admission of guilt. The mere reference to Gonzalez's silence concerning his innocence does not constitute misconduct. The prosecutor told the jury it was for them to interpret Gonzalez's use of the word "allegedly." And the prosecutor emphasized the heavy burden on the State. We conclude Gonzalez fails to satisfy his burden of establishing that the prosecutor's statements were improper.

Gonzalez also fails to show a substantial likelihood that the misconduct affected the jury's verdict. When viewed in the context of the entire closing argument, the prosecutor's reference to the jail call was not significant. During his argument, the prosecutor illustrated Gonzalez's pattern of dishonesty:

> Let's talk about deception. Let's talk about a defendant who some days before he kills Christopher Davis deletes his Gmail account. He deletes the account that he uses to communicate initially with Mr. Davis. He flees to California all of a sudden. . . . And his deception in fleeing was obviously to get away. But he doesn't just delete his Gmail account and he doesn't just flee to California. He deletes his text messages of his contact with Mr. Davis and others.[38]

The prosecutor argued the jail call was a prime example of Gonzalez's repeated deception:

> So it's not just about what the defendant did. It's about what the defendant said. It's about what he said in that phone call to his [girlfriend.] But more significantly it's about what he said to Detective Jorgensen and Detective Arnett. Because he said things that just weren't accurate. He said, when asked, that he got the car from

---

[38] RP (Sept. 15, 2016) at 1076-77.

some Salvadorian gang dude in Everett. Well, we know where he got the car. He got the car from Christopher Davis after he killed him. He said that he never had an e-mail address. . . .

But he also told Detective Jorgenson that he didn't have a phone. . . . But then he actually said, well, I may have had that phone, . . . but I lost it . . . . Well, that's just not true because you know where the phone was found. The phone was found in Mr. Davis's car on October 15th of 2015.

So, he also told Detective Jorgensen and Detective Arnett that he'd been to California since the end of August. And, again, we know that's not true. He was clearly in Lynnwood, Washington for much of, for all of the first part of September . . . . This defendant was never in California at the end of August. . . .

He's also deceptive to others. He's deceptive to [his girlfriend] in the jail phone call. He was also deceptive with regards to his phone records and his e-mail.[39]

The prosecutor's theme of deception is reasonably supported by the evidence admitted during trial. Detectives Jorgenson and Arnett both testified about Gonzalez's dishonesty during the investigation.

Additionally, the court's instructions cured any potential prejudice. The court instructed the jury that "the lawyers' statements are not evidence."[40] The court told the jury to "disregard any remark, statement, or argument that is not supported by the evidence or the law."[41] The court also instructed the jury about

---

[39] RP (Sept. 15, 2016) at 1078-79.

[40] CP at 54.

[41] Id.

the burden of proof.[42] And "[j]urors are presumed to follow the court's instructions."[43]

Given the prosecutor's entire argument, the evidence, and the jury instructions, we conclude it is unlikely the prosecutor's challenged remarks affected the jury's verdict.

Therefore, we affirm.


WE CONCUR:

Mann, A.C.J.

Trickey, J

---

[42] CP at 57 ("The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists as to these elements.").

[43] In re Pers. Restraint of Phelps, 190 Wn.2d 155, 172, 410 P.3d 1142 (2018).