## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 77945-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| RICKY DESHAWN KING, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: June 3, 2019 |
| | ) | |

MANN, A.C.J. — Ricky King was convicted of rape of a child in the third degree. He asserts that the trial court erred by admitting hearsay evidence and that the prosecutor committed misconduct during closing arguments. An evidentiary error only warrants reversal when it materially affects the outcome of trial. Here, the hearsay evidence did not materially affect the outcome of King's trial because the implication that he asserts caused him prejudice was already present through the nonhearsay portion of the testimony. Further, the prosecutor did not commit misconduct because his arguments were fair interpretations of the evidence. We affirm.

I.

In 2013, King's great aunt and great grandmother died within a few weeks of each other. Both funerals were held in Portland, Oregon, necessitating King's family to

travel from the Seattle, Washington area to Portland, Oregon. King attended both funerals; King's then 15-year-old cousin, E.K., did not, though her parents did. E.K.'s parents left her home with her older brother.

While E.K.'s parents were away at one of the funerals, E.K. was in her bedroom when King knocked on the front door. E.K. answered the door and King explained that he was looking for a car part from her father. E.K. told King that the part was probably in the back shed, then closed the door and went back to her room. Soon after, she heard the door open again and saw King standing in the hallway. King then entered E.K.'s bedroom, pushed her onto the bed, and raped her while she attempted to fight him off. After King raped E.K., he took pictures of her naked body "because he want[ed] to remember [the event]." King told E.K. that if she told anyone no one would believe her and his motorcycle club brothers had his back anyway. King also told E.K. that he was going to start texting her and demanded that she text him back.

E.K. told no one about this incident for some time. She was sad, angry, in pain, and felt dirty. She explained that she was embarrassed and "did [not] want to talk to anybody about it." Then a few months after the rape occurred, E.K. told her older sister, Patrice Dunmore, what happened. Dunmore told E.K. that she had also been sexually assaulted when she was younger but that no one believed her when she told them.

About a year after the rape, E.K. had a panic attack while in the car with her other older sister, Zakeea Sykes, after Sykes mentioned the fictional character 'Ricky Bobby.'[1] This eventually led to E.K. telling Sykes about the rape. E.K. told Sykes "basically . . . everything" that happened, "She told me that she had been raped by

---

[1] Ricky Bobby is a character from the popular movie 'Talladega Nights: The Ballad of Ricky Bobby.' See https://www.imdb.com/title/tt0415306/plotsummary (last visited April 30, 2019).

Ricky." Sykes told E.K. that she needed to tell her parents, and if E.K. did not, Sykes would.

On January 23, 2015—about a week after E.K. told Sykes—E.K. told her mother and father what King had done. E.K.'s father called the police. Seattle Police Officer Philip Ocker responded and took a statement from E.K. Detective Jeffrey Spong followed up with E.K. on January 29, 2015, and took a recorded statement from E.K. about the incident.

The State charged King by information with rape of a child in the third degree. The trial court held a jury trial over four days in November 2017. At trial, the State called eight witnesses: E.K.'s mother, father, and grandmother (Frank, Catreece, and Gloria King, respectively) E.K., E.K.'s two sisters (Dunmore and Sykes), Detective Spong, and Officer Ocker. King's case consisted solely of King's father, Anthony King. King did not testify.

The jury found King guilty of rape of a child in the third degree. The trial court sentenced King to 60 months, to run consecutive to the unrelated charge for which King was already in prison. King appeals.

## II.

King argues that the trial court erred in admitting hearsay testimony by Sykes and that this error was substantially likely to affect the outcome of the trial. The State conceded that the trial court erred by admitting inadmissible hearsay evidence but contends that this error was harmless. We agree with the State.

During Sykes's testimony, she described an incident that occurred years prior involving King:

> I had probably been home for about an hour after school . . . and me and my boyfriend were watching a movie. And you know, [King] came yelling my name, ["]Are you home, are you home?["] And I was like, ["]Yeah, what are you doing here?["] And he was like, ["]Well, your mom and dad said to come check on you.["] And I was like, ["]I just talked to my mom and dad.["] Like, ["]No need for you to come check on me.["]
>
> And then he tried to come into the door into my room . . . And I was like . . . ["]I don't need you down here["] . . . .I was like, ["]I can call my dad right now.["] And he kind of, I think, stood there for a second. And then I guess when he realized I was serious because I got my cell phone out, he left.

The prosecutor then asked: "Did you ever find out if your parents had sent him to go check on you?" The defense objected because this statement "refers to hearsay[,]" but the trial court overruled the objection and allowed Sykes to respond: "I later asked them . . . and they were like, [']Well, we didn't ask him to come.[']"

Both parties agree that the trial court erred by allowing Sykes to answer this question because the answer was inadmissible hearsay. But an evidentiary error such as this only requires reversal if "within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred." State v. Gonzalez-Gonzalez, 193 Wn. App. 683, 689, 370 P.3d 989 (2016). An error is harmless when it is of minor significance within the context of the entire trial. State v. Barry, 183 Wn.2d 297, 317-18, 352 P.3d 161 (2015).

King asserts that this hearsay evidence prejudiced him because it painted King as a liar who was trying to gain entry into a teenage girl's bedroom when her parents were not home.[2] We disagree with King's characterization of the hearsay evidence. It was the admissible portion of Sykes's testimony that painted King as an individual who

---

[2] To the extent that King also argues that Sykes's entire account of this incident was impermissible character evidence which should have been excluded under ER 404(b), we decline to reach this argument as King raised it for the first time on appeal and it is not a manifest error affecting a constitutional right. RAP 2.5(a); State v. O'Hara, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009).

was trying to gain entry into a teenage girl's bedroom while her parents were away, not the inadmissible hearsay portion. The damaging part of this testimony, therefore, was King's actions—the admissible portion of the testimony—not the implication that King lied—the hearsay portion of the testimony.

Further, the admissible portion of Sykes's testimony already heavily implied that King was lying about why he was there. Sykes explained that she had just spoken to her parents on the phone, which indicated that there was no reason for them to send King to check on her, and King refused to leave until Sykes took out her cellphone to call her parents. The hearsay evidence simply reinforced the implication that was already present from the admissible portion of Sykes's testimony.

Therefore, we believe that within reasonable probabilities the outcome of the trial was not materially affected by the trial court's error. Gonzalez-Gonzalez, 193 Wn. App. at 689.

III.

King next contends that the prosecutor committed misconduct during his closing argument by arguing facts not in evidence. We disagree.

"To prevail on a claim of prosecutorial misconduct, a defendant must show that 'in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial.'" State v. Pinson, 183 Wn. App. 411, 416, 333 P.3d 528 (2014) (citing In re Pers. Restraint of Glassman, 175 Wn.2d 696, 704, 286 P.3d 673 (2012) (plurality opinion)). For example, a prosecutor cannot invite the jury to decide a case based on evidence outside of the record. State v. Pierce, 169 Wn. App. 533, 553, 280 P.3d (2012). But prosecutors are given "some latitude to argue facts and

inferences from the evidence." State v. Jones, 144 Wn. App. 284, 293, 183 P.3d 307 (2008) (internal citation omitted). Further, "[w]hen the defendant fails to object to the challenged portions of the prosecutor's argument, he is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." Pinson, 183 Wn. App. at 416 (citing State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012)).

King contends that three different comments made by the prosecutor constituted misconduct because they were based on evidence outside the record. First, the prosecutor argued that E.K. made consistent statements about the rape to numerous people: "The same details that she was able to give to her sisters, her mother, Officer Ocker, Detective Spong, the defense attorney in an interview, and then, ultimately, to all of you." Then, he added that E.K. "provided the same details to [Sykes] that you heard in this court." Finally, in rebuttal, the prosecutor argued "She's never changed her story. Her story has been consistent from the first time she told [Dunmore] about it, and her story is reasonable, and her story is true."

These comments did not constitute prosecutorial misconduct because they were within the latitude given to prosecutors to argue facts and inferences from the evidence. Jones, 144 Wn. App. at 293. The State's primary evidence, below, was E.K.'s testimony. After describing, in detail, how King had raped her, E.K. explained what she told others about the rape. First, E.K. told Dunmore that King had raped her. Then she told Sykes. When the prosecutor asked E.K. "what did you tell [Sykes] about what Ricky did to you?" she responded "I basically told her everything." The prosecutor

confirmed, "What you just told the jury earlier this morning?" To which E.K. responded "Yes."

E.K. then told her mother what happened. The prosecutor asked "what did you tell your mom?" E.K. responded "I told her what happened." The prosecutor, again, confirmed "The same details that you told earlier?" And E.K. answered "Yes." E.K. then confirmed that she told the same details to Officer Ocker and Detective Spong.

On redirect examination, the prosecutor confirmed with even more detail what E.K. told Detective Spong by having E.K. read portions of Detective Spong's interview transcript:

> [E.K., reading the transcript:] I accidentally told my sister so she said I have two weeks to tell my parents or she would. . . .
>
> And then I was like kind of curious why he was here – why he was in there . . . And he pushed me once and then I fell back on my bed, and I thought he was playing, so I pushed him back. And then he pushed me on my bed and grabbed my arm. . . .
>
> And then he put it above my head and his leg was on top of one of my legs, so I got kind of scared and I thought he was going to hit me or something. So I started trying to move, and he grabbed my other arm and put it above my head too. . . .
>
> [State:] And what you told the detectives that day, was that the same thing that you told the police officer that first came to your house? . . .
>
> [E.K.] yeah, I'm pretty sure what I told them is what I had told the officer that came out to my house that day.

Therefore, in arguing that E.K. had not changed her story, the State was not asking the jury to consider evidence outside of the record. Instead, the State was arguing a reasonable inference from E.K.'s testimony. These comments were within the latitude given to prosecutors to argue facts and inferences from the evidence. Jones, 144 Wn. App. at 293. Further, since King did not object to these arguments below, they

were not so flagrant and ill intentioned as to cause prejudice to the defendant that could not have been cured by instructing the jury. Pinson, 183 Wn. App. at 416.[3]

IV.

Finally, King argues that the cumulative effect of the errors below violated his right to a fair trial. Because the only error that occurred below—the trial court allowing Sykes to testify as to inadmissible hearsay evidence—was harmless, King was provided a fair trial.

We affirm.

_Mann, ACJ_

WE CONCUR:

_Chun, J._

---

[3] The trial court instructed the jury that "[t]he lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence . . . . You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions."