# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48214-2-II |
| Respondent. | |
| vs. | UNPUBLISHED OPINION |
| GARY LEE BROWN, JR., aka GARY L. TAYLOR, | |
| Appellant. | |

MAXA, P. J. – Gary Brown appeals his convictions of second degree assault and felony harassment.[1] These convictions arise from a series of threatening texts and voice messages that Brown sent to his former girlfriend and an altercation where he held a knife to her throat.

We hold that (1) the trial court's instruction that defined "deadly weapon" was erroneous, but Brown invited the error and we need not review his challenge; (2) the prosecutor asking Brown whether the victim had lied was improper, but Brown failed to object and therefore waived his challenge; (3) the prosecutor did not commit misconduct in commenting on Brown's silence in an unrelated matter where Brown was the victim of a crime; (4) the cumulative error doctrine is inapplicable because the errors were either invited or waived; and (5) the claims asserted in Brown's statement of additional grounds (SAG) have no merit.

---

[1] Brown does not appeal his conviction of fourth degree assault.

Accordingly, we affirm Brown's convictions.

FACTS

In October 2013, Brown and Edna Ferry started a dating relationship. In January 2014, they separated. Following the separation, Brown sent Ferry a number of threatening text messages and voice messages.

In February, Brown and Ferry resumed their relationship. On February 13, they got into a verbal altercation while Ferry was giving Brown a ride. Brown threatened to slit Ferry's throat and forced Ferry to park her van in the middle of the road. Brown exited the van, walked over to the driver's side, and put a knife to Ferry's throat. Brown again threatened to cut Ferry's throat. Ferry managed to push the knife away with her hand and Brown calmed down. The State charged Brown with second degree assault, fourth degree assault, and felony harassment.

At trial, Ferry testified about the February 13 incident. She stated that the knife Brown held to her throat was about as long as her hand. Brown testified and denied carrying a knife or ever threatening Ferry with a knife.

During cross examination, the prosecutor asked Brown about his breakup with Ferry:

Q. All right. And when Edna – Edna tried to break up with you in January, didn't she?

A. No, she did not break up with me.

Q. She didn't? Did she try to break up with you? Did she tell you you were over?

A. You're – you're going – you're – you're going to someplace that you have – all you're going by is what your paperwork says. And I'm telling you, it was never nothing like that until Edna talked to Dante a couple of days later, because she thought . . .

Q. Were you in the courtroom when Edna testified?

A. Yes, I was.

Q. Okay. And you heard her say that, right?

A. Yes, I did.

Q. So was she lying?

A. Well, it – it – you're not – you're not understanding.

Q. Yes or no, was she lying?

A. Yes, she is.

Report of Proceedings (RP) (Sept. 16, 2014) at 102. Brown did not object to this line of questioning.

The prosecutor asked Brown about an incident in which Ferry's former boyfriend pointed a hunting rifle at him and was arrested as a result. The following exchange then occurred:

Q. But you didn't give a statement when the police came back to talk to you?

A. No, I didn't see the police. I wasn't there.

Q. So you didn't talk to the police, because talking to the police makes you a rat, right?

A. No. I – you're wrong. I had another appointment at a shake mill about picking up some money for some shingle blocks that I had sold and that's where I went to.

RP (Sept. 16, 2014) at 103-04. Brown did not object to this line of questioning.

*Jury Instructions*

Defense counsel and the prosecutor worked together to draft the proposed jury instructions. The parties submitted these instructions to the trial court as "Plaintiff's Proposed Jury Instructions." Clerk's Papers (CP) at 31-41. The prosecutor stated that although the proposed instructions still were captioned as plaintiff's proposed instructions, "we worked on it together and *this is a joint product*." RP (Sept. 17, 2014) at 136 (emphasis added). Defense

counsel did not object to that characterization and did not object to any of the proposed

instructions.

Proposed instruction 12 provided:

"Deadly weapon" means any weapon, device, instrument, or article, which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm.

A knife having a blade longer than three inches is a deadly weapon. Whether a knife having a blade less than three inches long is a deadly weapon is a question of fact that is for you to decide.

CP at 36. The instruction cited 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL

2.07.01 (2d ed. 1994) (WPIC), the pattern deadly weapon sentencing enhancement instruction.

The trial court's final instruction 12 was identical to the proposed jury instruction. Brown did

not object to this instruction.

*Verdict and Sentencing*

The jury found Brown guilty of second degree assault and felony harassment. Brown

appeals his convictions.

ANALYSIS

A.    DEADLY WEAPON INSTRUCTION

Brown argues that the trial court erred by including language from RCW 9.94A.825 in its

jury instruction on the definition of a deadly weapon. Specifically, instruction 12 provided that

"[a] knife having a blade longer than three inches is a deadly weapon." The State appears to

concede that the deadly weapon definition in RCW 9.94A.825 does not apply to Brown. We

hold that the instruction was erroneous, but that Brown invited the error.

1.    Definition of Deadly Weapon

Brown was charged with second degree assault under RCW 9A.36.021(1)(c), which requires an assault with a deadly weapon.  The trial court instructed the jury that to convict Brown, it had to find that Brown assaulted Ferry with a deadly weapon.

RCW 9A.04.110(6) defines "deadly weapon" as "any explosive or loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance . . . which, under the circumstances in which it is used, attempted to be used, or threatened to be used, *is readily capable of causing death or substantial bodily harm*."  (Emphasis added.)  The trial court incorporated this definition in the first paragraph of instruction 12.

RCW 9.94A.825 defines "deadly weapon" to include "any knife having a blade longer than three inches."  The trial court incorporated this definition in the second paragraph of instruction 12.  However, this definition applies only if "there has been a special allegation and evidence establishing that the accused or an accomplice was armed with a deadly weapon at the time of the commission of the crime," to be determined by special verdict.  RCW 9.94A.825.  In other words, RCW 9.94A.825 applies only when a deadly weapon sentencing aggravator is charged, not when the existence of a deadly weapon is an element of the crime.  *See State v. Recuenco*, 163 Wn.2d 428, 434, 180 P.3d 1276 (2008).

The trial court's instruction defining "deadly weapon" was based on WPIC 2.07.01. However, the title of the pattern instruction and the accompanying note on use make it clear that the definition of a deadly weapon as "[a] knife having a blade longer than three inches" applies only to a sentencing enhancement special verdict.  WPIC 2.07.01, note on use.

We conclude that the trial court erred in including the RCW 9.94A.825 definition of deadly weapon as "a knife with a blade longer than three inches" in instruction 12.

5

2.    Invited Error

Brown and the State jointly proposed the instruction the trial court adopted as instruction

12.  Therefore, we hold that Brown invited the error.

The invited error doctrine prohibits a party from setting up an error at trial and then

challenging that error on appeal.  *In re Pers. Restraint of Coggin*, 182 Wn.2d 115, 119, 340 P.3d

810 (2014).  To determine whether the invited error doctrine applies, we consider whether the

defendant "affirmatively assented to the error, materially contributed to it, or benefited from it."

*State v. Momah*, 167 Wn.2d 140, 154, 217 P.3d 321 (2009).  Under this test, the invited error

doctrine precludes appellate review of a defendant's claim of instructional error when the trial

court gave the instruction at the defendant's request.  *State v. Studd*, 137 Wn.2d 533, 547, 973

P.2d 1049 (1999).

Here, the prosecutor represented to the trial court that he and defense counsel had worked

together on the proposed instructions and that they were a "joint product."  RP (Sept. 17, 2014)

at 136.  Defense counsel did not object to that characterization and did not object to any of the

proposed instructions, including instruction 12.

Brown did not specifically request that the trial court give instruction 12.  But he

acquiesced in the prosecutor's representation that the parties were jointly proposing all the

instructions.  Therefore, Brown at least "materially contributed" to the court's error.  *Momah*,

167 Wn.2d at 154.

We hold that the invited error doctrine precludes our review of Brown's challenge to

instruction 12.

B.    PROSECUTORIAL MISCONDUCT

Brown argues that the prosecutor committed two forms of misconduct during cross-examination: asking him whether Ferry was lying and commenting on his right to remain silent. We disagree.

1.    Legal Principles

To prevail on a prosecutorial misconduct claim, a defendant must show that the prosecutor's conduct was both improper and prejudicial "in the context of the record and all of the circumstances of the trial." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). To establish prejudice, the defendant must "show a substantial likelihood that the misconduct affected the jury verdict." *Id*.

Where, as here, the defendant fails to object at trial to the alleged misconduct, any error is waived unless the defendant establishes the misconduct was "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). To meet this heightened standard, the defendant must show that (1) no curative instructions would have eliminated the prejudicial effect and (2) the misconduct caused prejudice that was substantially likely to affect the jury's verdict. *Id.* at 761.

2.    Asking Whether Ferry Was Lying

Brown argues that the prosecutor asking him on cross-examination whether Ferry was lying was improper. We agree, but we conclude that Brown waived any error by failing to object.

It is improper for a prosecutor to ask a witness whether another witness is lying. *State v. Ramos*, 164 Wn. App. 327, 334, 263 P.3d 1268 (2011). Here, the prosecutor asked Brown to comment on whether Ferry had lied in testifying that she had tried to break up with him in

January. Brown was provoked into testifying that Ferry was lying. Therefore, we conclude that the prosecutor's questioning was improper.

However, the questioning involved a collateral issue – when Brown and Ferry had broken up. Whether Ferry was lying on this issue was not central to the case. And the prosecutor did not ask Brown whether Ferry was lying regarding the rest of her more material testimony. We conclude that an instruction could have cured any prejudice if Brown had objected. Therefore, we hold that Brown waived his challenge to the prosecutor's improper questions.

3. Comment on Brown's Right to Remain Silent

Brown argues that the prosecutor impermissibly commented on Brown's silence during cross-examination. We disagree because the questioning related to a separate incident between Brown and Ferry's former boyfriend.

Both the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution guarantee a defendant the right to be free from compelled self-incrimination, including a right to remain silent. *State v. Pinson*, 183 Wn. App. 411, 417, 333 P.3d 528 (2014). A comment on the right to remain silent occurs when the State uses evidence of the defendant's silence to its advantage, either as substantive evidence of the defendant's guilt or to suggest that the silence admitted guilt. *State v. Lewis*, 130 Wn.2d 700, 707, 927 P.2d 235 (1996).

Here, the prosecutor asked Brown, "But you didn't give a statement when the police came back to talk to you?" and "[Y]ou didn't talk to the police, because talking to the police makes you a rat, right?" RP (Sept. 16, 2014) at 104. But these questions did not relate to this case. Instead, the questions involved an incident with Ferry's former boyfriend, who threatened

Brown with a gun. Brown was a *victim* in that incident, not a defendant. Therefore, the right to remain silent did not apply. We hold that Brown's challenge to these questions fails.

C.     CUMULATIVE ERROR

Brown argues that cumulative errors denied him a fair trial. Under the cumulative error doctrine, the defendant must show that the combined effect of multiple errors requires a new trial. *State v. Clark*, 187 Wn.2d 641, 649, 389 P.3d 462 (2017). Here, there were two errors. But we hold that Brown either invited or waived those errors. Therefore, we hold that the cumulative error doctrine does not apply. *See State v. Elmore*, 139 Wn.2d 250, 280, 311 n. 27, 985 P.2d 289 (1999) (invited errors cannot accumulate into cumulative error).

D.     SAG CLAIMS

In his SAG, Brown raises multiple assertions of error. We conclude that none of Brown's assertions have merit.

1.     Ineffective Assistance of Trial Counsel

a.     Legal Principles

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to effective assistance of counsel. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). We review claims of ineffective assistance of counsel de novo. *Id.*

To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant. *Id.* at 457-58. Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* at 458. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the

proceeding would have differed. *Id*. Reasonable probability in this context means a probability sufficient to undermine confidence in the outcome. *Id*.

       b.     Violation of RCW 10.79.035

Brown asserts that he "was in County Jail for months, and nothing was filed for the issuance of a[n] arrest warrant" under RCW 10.79.035. SAG at 2. But the record shows that the State moved for a warrant for Brown's arrest in July 2014. The record does not contain the warrant itself.

RAP 10.10(c) requires an appellant to inform this court of the "nature and occurrence of alleged errors." Because it is unclear what Brown is attempting to argue regarding defense counsel's performance in relation to the arrest warrant, this assertion is too vague to properly inform us of the error. Therefore, we decline to address this assertion.

       c.     Violation of RCW 9A.72.085

Brown asserts that there was "[n]othing pursuant to RCW 9A.72.085 [standards for certifying an unsworn statement] from a victim" before his arrest. SAG at 2. But he does not elaborate, or explain how defense counsel's performance was deficient in relation to this assertion. Again, this assertion is too vague to properly inform us of the error. *See* RAP 10.10(c). Therefore, we decline to address this assertion.

       d.     Jury Instruction 12

Brown argues that trial counsel's representation was ineffective because his counsel failed to object to instruction 12. As discussed above, invited error precludes direct review of this instruction because Brown's defense counsel proposed the instruction at issue jointly with the prosecutor. But invited error does not preclude ineffective assistance of counsel claims arising from instructional error. *State v. Eplett*, 167 Wn. App. 660, 664, 274 P.3d 401 (2012).

The applicable definition of deadly weapon, set forth in RCW 9A.04.110(6), required the State to prove that Brown's knife under the circumstances in which it was used was "readily capable of causing death or substantial bodily harm." Instruction 12 improperly added the definition of deadly weapon from RCW 9.94A.825: "any knife having a blade longer than three inches." Therefore, instruction 12 allowed the jury to convict Brown of second degree assault regardless of whether Brown used the knife under the circumstances in which the knife was "readily capable of causing death or substantial bodily harm," RCW 9A.04.110(6), as long as the knife blade was three inches long.

Defense counsel's conduct is not deficient if it can be characterized as legitimate trial strategy or tactics. *Estes*, 188 Wn.2d at 458. But here, defense counsel had no apparent trial strategy or tactic for proposing or failing to object to an instruction that lessened the State's burden to prove an element of the charged crime. Therefore, we conclude that defense counsel's performance was deficient. *Id.*

However, there is no indication in the record that the instructional error caused Brown any prejudice. Despite the incorrect instruction, there was no basis for the jury to conclude the weapon used here *was not* used in in a manner which was "readily capable of causing death or substantial bodily harm." RCW 9A.04.110(6). The record reflects that Brown held a knife to Ferry's throat. Under these facts, the knife clearly was used in a manner consistent with the definition of a deadly weapon under RCW 9A.04.110(6) even if its blade was less than three inches long.

Accordingly, we reject Brown's ineffective assistance of counsel claim based on instruction 12.

e.     Motion to Suppress

Brown appears to argue that he received ineffective assistance of counsel due to trial counsel's failure to ask for a suppression hearing.  It is unclear what Brown is attempting to argue regarding the suppression hearing.  We hold that Brown's assertion is too vague to properly inform us of the error.  RAP 10.10(c).   Therefore, we decline to consider this assertion.

f.     Unnecessary Delay

Brown asserts that he received ineffective assistance of counsel due to trial counsel's failure to "file the necessary paperwork" with his notice of appeal.  SAG at 2.

Brown's appeal was delayed because he failed to pay a filing fee or file an order of indigency, resulting in a dismissal of the appeal.   Even assuming that defense counsel's failure to obtain and file an order of indigency was deficient, Brown does not explain how the delay caused by this failure prejudiced his appeal in any way.  And there is no indication in the record that the delay caused any such prejudice.  Therefore, we reject Brown's assertion.

g.     Failure to Examine Juror

Brown argues that he received ineffective assistance of counsel because defense counsel failed to question a juror who saw Brown in handcuffs when he was being escorted into the courtroom.

Before the trial court read the instructions to the jury, Brown informed the trial court that a juror had seen him in handcuffs.  The court informed defense counsel that "we can question her to see what exactly she saw" and offered to "give her an instruction not to mention that to other jurors during deliberations and to give no inference in any way to it."  RP (Sept. 17, 2014) at 139.  Defense counsel stated, "I'm not going to ask you to take any action.  I frankly think that it just re-emphasizes the situation more than necessary."  RP (Sept. 17, 2014) at 139-40.  The court

gave defense counsel another opportunity to explore the issue, but defense counsel declined to question the juror in question and stated, "Your Honor, I don't want to re-emphasize the situation to the juror." RP (Sept. 17, 2014) at 140.

Here, the tactical reason for defense counsel's decision not to examine the juror, cited twice to the trial court, was not to call extra attention to the fact that the defendant was in handcuffs. Therefore, we conclude that defense counsel's performance was not deficient in this regard. We reject Brown's ineffective assistance of counsel claim based on defense counsel's failure to examine the juror.

  h. Probable Cause Determination

Brown asserts that "there is no record for a probable cause determination by [a] neutral magistrate, and no record to challenge." SAG at 3. He apparently blames this problem on defense counsel.[2] But the record contains the Motion and Declaration for Order for Warrant of Arrest from the State, which provided the grounds for his arrest.

We conclude that Brown's assertion is too vague to properly inform us of the error because it is unclear what Brown is attempting to argue. RAP 10.10(c). Therefore, we decline to address this assertion.

  2. Ineffective Assistance of Appellate Counsel

Brown appears to assert that he was deprived of effective assistance of appellate counsel. He claims that there was a lack of communication between him and his attorney that prevented him from "looking at issues of [his] case," performing his own research, and "review[ing] any action before [counsel] file[d] in court." SAG at 3.

---

[2] This assertion is made in the section of Brown's SAG discussing ineffective assistance of appellate counsel, but this claim seems to involve defense counsel.

13

Brown attached three letters he sent to his appellate counsel to his SAG.  However, we may consider only facts contained in the record when addressing an ineffective assistance claim." *Estes*, 188 Wn.2d at 467.  Brown's letters and appellate counsel's responses to Brown are outside the record.  Therefore, we decline to consider this assertion. *Id*.

CONCLUSION

We affirm Brown's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

GLASGOW, J.

CRUSER, J.